## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## SHREVEPORT DIVISION

LON BROWN                                    CIVIL ACTION NO. 10-1283

VERSUS                                       JUDGE S. MAURICE HICKS, JR.

CITY OF SHREVEPORT, ET AL.                   MAGISTRATE JUDGE HORNSBY

### MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment (Record Document 16) filed by Defendants, the City of Shreveport, Daniel Lynch, and Henry Whitehorn, Sr.  Defendants move for the dismissal with prejudice of all claims asserted by Plaintiff Lon Brown ("Brown").  Brown opposed the Motion for Summary Judgment. See Record Document 23. For the reasons which follow, the Motion for Summary Judgment is **GRANTED** and all claims against Defendants are **DISMISSED WITH PREJUDICE**.

### BACKGROUND[1]

On August 13, 2009 at approximately 8:00 p.m., Officer Daniel Lynch ("Officer Lynch") performed a traffic stop in the 1600 block of Ashton Street near the intersection of

---

[1]Defendants filed a detailed Statement of Undisputed Material Facts (Record Document 16-2).  In response, Brown likewise filed a Statement of Undisputed Material Facts (Record Document 23-1).  However, Brown's filing consists in large part of conclusory statements unsupported by competent summary judgment evidence.   See Malacara v. Garber, 353 F.3d 393, 405 (5th Cir. 2003) ("When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court."); Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994) ("[U]nsubstantiated assertions are not competent summary judgment evidence.").  The filing further fails to dispute many of the facts set forth in Defendants' filing. See F.R.C.P. 56(c)(1)(a) ("A party asserting that a fact. . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record.").  Those undisputed facts are accepted as true.  Thus, much of the background section of the instant Memorandum Ruling is drawn from Defendants' Statement of Undisputed Material Facts.

Pierre Avenue after the driver failed to use her turn signal.  <u>See</u> Record Document 16, Exhibit B; Exhibit D at ¶ 1.  When Officer Lynch approached the vehicle to obtain the driver's identification, he smelled marijuana and asked the driver, a white female, to step out of the vehicle and for permission to search the vehicle.  <u>See id.</u>, Exhibit D at ¶ 2.  Upon obtaining the driver's consent, Officer Lynch secured the driver in the back seat of his patrol car while he searched the vehicle.  <u>See id.</u>, Exhibit D at ¶¶ 2-3.  No contraband was found in the vehicle, but Officer Lynch returned to his patrol car and found that the driver had spilled a small amount of marijuana on the back seat of his patrol car.  <u>See id.</u>

Officer Lynch then obtained the driver's background information and asked where she had obtained the marijuana.  <u>See id.</u>, Exhibit D at ¶ 5.  The driver responded that she had purchased the marijuana from a black male at a convenience store located at the corner of Pierre Avenue and Garden Street, and described the black male as having long dreadlocks, a short, "bowed up" stocky build, dark skin, and that he used the nickname "Bam Bam."  <u>Id.</u>  She also stated that the black male drove a gold or tan Pontiac Sunfire and that she had purchased marijuana from him on two prior occasions.  <u>See id.</u>  After recording this information, Officer Lynch received a higher priority call and released the driver with a warning.  <u>See id.</u>, Exhibit D at ¶ 6.  No citations were issued and no arrest was made.  <u>See id.</u>

Thereafter, Officer Lynch advised Cpl. Jon Flores ("Cpl. Flores") and Officer Leroy Bates ("Officer Bates") that he had stopped a white female who was in possession of marijuana and that she purchased the marijuana from a man driving a gold or tan Sunfire. <u>See id.</u>, Exhibit D at ¶ 7; Exhibit E at ¶ 1  Officer Lynch requested Cpl. Flores and Officer Bates keep a lookout for that vehicle.  <u>See id.</u>

On August 14, 2009, at approximately 9:45 p.m., Officer Lynch observed a gold Sunfire parked outside a Fil-A-Sac convenience store located at the corner of Pierre Avenue and Garden Street,[2] and observed a black male fitting the description given by the white female walking away from the area where the Sunfire was parked.  See id., Exhibit B; Exhibit D at ¶ 8.  Officer Lynch requested back-up from Cpl. Flores and Officer Bates and then pulled into the parking lot of the convenience store, exited his patrol car, and walked into the store.  See id., Exhibit D at ¶¶ 8-9.  It is at this point that the audio and video recordings from Officer Lynch's patrol car begin to show the events at issue in this case.  See id., Exhibit A (MVS).

Once inside the convenience store, Officer Lynch asked the man fitting the description, Brown, how he got to the store.  See id., Exhibit D at ¶ 9.  Brown responded "that gold car" and pointed to the direction of the Sunfire.  See id., Exhibit D at ¶ 9.  Officer Lynch asked Brown to step outside and, once outside, asked Brown to turn around and put his hands on the wall in order to perform a pat-down for weapons.  See id., Exhibit A; Exhibit D at ¶¶ 9-10.

Brown consented to Officer Lynch looking at his identification and to a brief pat-down.  See id., Exhibit G at 74.  Officer Lynch informed Brown that he was being stopped for suspicion of selling drugs, which Brown denied.  See id., Exhibit D at ¶ 11. Officer Lynch stated that Brown was cussing loudly and was reacting to questions in a hostile manner at this time.  See id.  The audio recording supports Officer Lynch's

---

[2]Both Officer Lynch and Cpl. Flores describe the area in which the Fil-A-Sac convenience store is located as a high crime area known for frequent drug and gun activity. See Record Document 16, Exhibit D at ¶ 10; Exhibit E ¶ 2].

statement.  See id., Exhibit A.  When Officer Lynch asked Brown if he drove the gold Sunfire parked on the side of the store, Brown denied driving the car and indicated that he drove a gold Lexus.  See id., Exhibit A; Exhibit D at ¶ 11.

Officer Lynch then motioned for Brown to walk towards his patrol car.  See id., Exhibit A; Exhibit D at ¶ 12.  As shown in the video, as Brown, Officer Lynch, Cpl. Flores, and Officer Bates were walking towards the car, Brown became belligerent, turning towards Officer Lynch and shaking his finger in Officer Lynch's face.  See id.  Officer Lynch then grabbed Brown's arm and turned him to the wall outside the front window of the store in order to handcuff him and keep him subdued while they completed their investigation.  See id.  Brown grabbed the window burglar bars and refused to comply with the officers' verbal commands to place his hands behind his back.  See id.  Officer Bates grabbed Brown's right arm and attempted to place his right hand behind his back using a rear wrist lock.  See id., Exhibit B.  Cpl. Flores observed Brown reach his left hand towards the front waist band area of his pants.  See id., Exhibit E at ¶ 7.  Knowing Brown had not been thoroughly patted down and based on his experience, Cpl. Flores decided to give one distraction strike to Brown's face.  See id.  Brown admits that Cpl. Flores struck him at the time that he removed his hand from behind his back.  See id., Exhibit G at 84-85.

Officer Lynch and Officer Bates brought Brown to the ground in front of the patrol car.  See id., Exhibit A; Exhibit D at ¶ 13.  Brown continued to resist and Officer Lynch gave additional distraction strikes to Brown's upper body so that he would place his hands behind his back.  See id.  The officers can be heard repeatedly instructing Brown to place his hands behind his back.  See id., Exhibit A.  Once Officer Lynch and Officer Bates placed Brown's hands behind his back, Cpl. Flores reached down and handcuffed him. See

id., Exhibit A; Exhibit G at ¶ 8.

Brown was thoroughly searched, placed in the back of Officer Lynch's patrol car, and taken to the Shreveport City Jail where he was booked for resisting an officer in violation of La. R.S. 14:108.  See id., Exhibit D at ¶ 14.  Section 108 provides, in pertinent part:

> Resisting an officer is the intentional interference with, opposition or resistance to, or obstruction of an individual acting in his official capacity and authorized by law to make a lawful arrest, lawful detention, or seizure of property or to serve any lawful process or court order when the offender knows or has reason to know that the person arresting, detaining, seizing property, or serving process is acting in his official capacity.

La. R.S. 14:108(A).

Brown posted bond and was released from jail at approximately 5:00 a.m. the next morning.  See Record Document 16, Exhibit G at 97-100.  The district attorney chose not to prosecute Brown and the criminal charges against him were dismissed.  See Record Document 1.  As a result of the August 14, 2009 incident, Brown did not receive any physical injuries other than bruising/a small "scratch" under his left eye.  See Record Document 16, Exhibit G at 84, 100-102.

On August 13, 2010, Brown filed this lawsuit naming Officer Lynch, the City of Shreveport ("the City"), and former Chief of Police Henry Whitehorn, Sr. ("Chief Whitehorn") as Defendants.  See Record Document 1, ¶ 5.  Brown asserts unlawful detention, excessive force, unlawful arrest, Monell, and state law claims against these Defendants. See id. at ¶¶ 18-24.  It further appears that Brown asserts a claim under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194 (1963), for failure to disclose exculpatory evidence.  See id. at ¶ 16.  Defendants filed the instant Motion for Summary Judgment seeking dismissal with prejudice of all claims.  See Record Document 16.

# LAW AND ANALYSIS

## I.    Summary Judgment Standard.

Summary judgment is proper pursuant to Rule 56 of the Federal Rules of Civil Procedure when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3]  Quality Infusion Care, Inc. v. Health Care Serv. Corp., 628 F.3d 725, 728 (5th Cir. 2010).  "Rule 56[(a)] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Patrick v. Ridge, 394 F.3d 311, 315 (5th Cir.2004).  If the movant demonstrates the absence of a genuine dispute of material fact, "the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." Gen. Universal Sys., Inc. v. Lee, 379 F.3d 131, 141 (5th Cir.2004).  Where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant, then summary judgment should be granted. See Boudreaux v. Swift Transp. Co., 402 F.3d 536, 540 (5th Cir.2005).

Recently, the Fifth Circuit discussed the summary judgment standard applicable in cases wherein video recordings taken at the scene make "facts evident." Carnaby v. City of Houston, 636 F.3d 183, 187 (5th Cir. 2011).  Specifically, the Fifth Circuit reasoned:

> Although we review evidence in the light most favorable to the nonmoving party, we assign greater weight, even at the summary judgment stage, to the

---

[3]The Court notes that the newly amended Rule 56 requires that there be "no genuine *dispute* as to any material fact," but this change does not alter the Court's analysis. F.R.C.P. 56(a) and advisory committee's note (emphasis added).

facts evident from video recordings taken at the scene. [The court] need not rely on the plaintiff's description of the facts where the record discredits that description but should instead consider the facts in the light depicted by the videotape.

Id. (internal citations and quotations omitted).

## II.    Qualified Immunity.

"Qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555 U.S. 223, 231, 129 S.Ct. 808, 815 (2009).  In Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151 (2001), the Supreme Court mandated a two-step sequence for resolving a government official's qualified immunity claim:  first, the court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right; and second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was clearly established at the time of defendant's alleged misconduct.  In 2009, the Pearson Court reconsidered the procedure required in Saucier, concluding:

> [W]e conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory. The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.

Pearson v. Callahan, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009).

"The touchstone of this inquiry is whether a reasonable person would have believed that his conduct conformed to the constitutional standard in light of the information available to him and the clearly established law."  Goodson v. Corpus Christi, 202 F.3d 730, 736 (5th Cir. 2000).  "If officers of reasonable competence could disagree as to whether the

plaintiff's rights were violated, the officer's qualified immunity remains intact." Tarver v. City of Edna, 410 F.3d 745, 750 (5th Cir. 2005).

Defendants argue that Officer Lynch did not violate Brown's constitutional rights. See Record Document 16-1 at 8. Nonetheless, they argue that "even if the Court in hindsight determines that a constitutional violation occurred, Officer Lynch's actions were objectively reasonable and he is entitled to qualified immunity for the claims against him." Id. at 8. Conversely, relying upon the video evidence, Brown argues that "Officer Lynch clearly violated [his] constitutional rights," that "Officer Lynch's actions were not objectively reasonable, and that Officer Lynch "is not entitled to qualified immunity for the claims against him." Record Document 23 at 5.

### III. Unlawful Detention Claims.

Brown alleges that he was unlawfully detained. He argues that he had been patted down and no drugs, weapons, or evidence of illegal activity were found. See Record Document 23 at 5. Thus, he contends, it was unreasonable for Officer Lynch to continue the detention. See id. Conversely, Defendants argue that Officer Lynch has reasonable suspicion to stop Plaintiff and *fully* investigate whether Brown was selling drugs. See Record Document 16-1 at 1.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures. See U.S. Const. Amend. IV. "The touchstone of the Fourth Amendment is reasonableness." Ohio v. Robinette, 519 U.S. 33, 39, 117 S.Ct. 417, 421 (1996). "Reasonableness, in turn, is measured in objective terms by examining the totality of the circumstances." Id.

Under Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868 (1968), a law enforcement officer

may stop and briefly detain an individual for investigative purposes if he has a reasonable suspicion that criminal activity is afoot, even if the officer lacks probable cause. Reasonable suspicion exists when the officers are able "to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant" that detention.  Id. at 21, 88 S.Ct. at 1880.  The facts available to the officer at the moment of the detention, when judged against an objective standard, must "warrant a man of reasonable caution in the belief that the action taken was appropriate."  Id. at 22, 88 S.Ct. at 1880.  Once the Court has determined that the officer's action was justified at its inception, it must "inquire whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop."  U.S. v. Brigham, 382 F.3d 500, 506-507 (5th Cir. 2004), citing Terry, 392 U.S. at 19–20, 88 S.Ct. at 1879.

Here, Brown has not disputed any of Defendants' Statement of Undisputed Material Facts regarding the August 13, 2009 sequence of events involving Officer Lynch's traffic stop of a white female who stated that she had purchased marijuana from a black male at a convenience store located at the corner of Pierre Avenue and Garden Street. Additionally, Officer Lynch knew the area where the Fil-A-Sac was located to be a high crime area where guns are frequently associated with drug activity.  He also personally observed a gold Sunfire parked at the convenience store and saw Brown, who matched the description given by the white female, leaving the area of the gold Sunfire.  All of the specific and articulable facts, taken together, establish reasonable suspicion that Brown was engaged in drug activity and Officer Lynch was justified in his initial stop of Brown.

The Court further finds that Officer Lynch's actions were also related in scope to the circumstances that justified the initial stop of Brown.  The undisputed facts demonstrate

that Officer Lynch walked into the convenience store, saw Brown, and asked him to step outside.  Brown complied with this request.  According to Officer Lynch's affidavit, which has gone uncontested, once outside Officer Lynch performed a pat-down because Brown was wearing baggy clothing which could easily conceal a weapon and because the convenience store was located in an area known for frequent drug and weapon activity.  Officer Lynch was well within the bounds of <u>Terry</u> in performing this pat-down.  <u>See</u> <u>Terry</u>, 392 U.S. at 30-31, 88 S.Ct. at 1884-1885 ("We merely hold today that where a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous, where in the course of investigating this behavior he identifies himself as a policeman and makes reasonable inquiries, and where nothing in the initial stages of the encounter serves to dispel his reasonable fear for his own or others' safety, he is entitled for the protection of himself and others in the area to conduct a carefully limited search of the outer clothing of such persons in an attempt to discover weapons which might be used to assault him.").  Additionally, it is undisputed that Brown consented to the pat-down.  <u>See</u> Record Document 16, Exhibit G at 74.

After the pat-down, Officer Lynch informed Brown of the reason he was being detained and asked Brown if drove a gold Sunfire.  Brown denied being involved in drug activity.  Moreover, although he had initially stated that he drove "that little gold car" and pointed in the direction of the Sunfire, Brown told the officers that he drove a "gold Lexus" after he learned that the Sunfire was tied to drug activity.  While Brown contends that the stop should have ended when he denied criminal activity, the Court notes that the law enforcement officers were not required to accept Brown's statements as true.  Here, it was

reasonable for Officer Lynch to continue the detention, which was very brief, in order to examine Brown's driver's license and vehicle registration and to run them through dispatch. See U.S. v. Jackson, 517 F.Supp.2d 859, 874 (W.D.La. 2007) ("There is no constitutional impediment to an officer's request to examine a driver's license and vehicle registration . . . and run a computer check on them."). While the  situation escalated prior to the officers having an opportunity to complete their investigation, the summary judgment record indicates that the brief detention of Brown for the purpose of confirming or dispelling suspicions that he was engaged in drug activity did not constitute an unlawful detention in violation of the Fourth Amendment.  See U.S. v. Melendez, No. 03-41240, 2005 WL 768774, **1 (5th Cir. April 5, 2005) ("[T]he officers were permitted to detain Melendez for as long as it took to diligently pursue a means of investigation that was likely to confirm or dispel the officers' suspicion about drug trafficking.").  Summary judgment in favor of Defendants is, therefore, granted as to Brown's unlawful detention claim.[4]

## IV.    Excessive Use of Force Claims.

Brown argues that Officer Lynch and "other unknown Police Officers used unnecessary and excessive force," specifically alleging that the officers grabbed him from behind, threw him to the ground, beat him, punched him in the face, and repeatedly hit and

---

[4]Defendants have presented the expert report of George Armbruster ("Armbruster"), who has 34+ years of experience as a law enforcement officer, 32+ years experience as a law enforcement instructor, and 26+ years experience as a law enforcement administrator.  See Record Document 16, Exhibit H.  Based on this experience, his education, and his training, Armbruster concluded that Officer Lynch's field interview and pat-down of Brown were "reasonable" and fell "well within the generally accepted guidelines and training of the law enforcement community."  Id., Exhibit H at 2.  His review of the incident also lead him to conclude that Officer Lynch's "stop and frisk" was based upon reasonable suspicion.  Id., Exhibit H at 3.

kicked him in the head.  See Record Document 1 at ¶ 9.  In his opposition to the Motion for

Summary Judgment, Brown again contends that he "was punched and hit by Officer Lynch

and Officer Flores" and that he "was unarmed and attempting to walk away from the

officers when he was violently attacked."  Record Document 23 at 5-6.

   In Graham v. Connor, 490 U.S. 386, 109 S.Ct. 1865 (1989), the Supreme Court

reasoned:

> Not every push or shove, even if it may later seem unnecessary in the peace
> of a judge's chambers, violates the Fourth Amendment.  The calculus of
> reasonableness must embody allowance for the fact that police officers are
> often forced to make split-second judgments—in circumstances that are
> tense, uncertain, and rapidly evolving—about the amount of force that is
> necessary in a particular situation.

Id. at 396, 109 S.Ct. at 1872.  To sustain a claim for excessive force in violation of the

Constitution, a plaintiff must demonstrate "(1) an injury, which (2) resulted directly and only

from the use of force that was clearly excessive to the need; and the excessiveness of

which was (3) objectively unreasonable."  Ikerd v. Blair, 101 F.3d 430, 433-434 (5th Cir.

1996).  In judging the objective reasonableness of the use of force, courts must balance

the amount of force used against the need for that force.  See id. at 434.

   The Court first notes that the video evidence in this matter clearly shows that no

force was used by any officer until after Brown began cursing, turning towards the officers

in what can be described as an aggressive manner, and shaking his finger in Officer

Lynch's face.  See Record Document 16, Exhibit A.  Brown also made certain concessions

during his deposition that are material to his excessive force claim.  He conceded that the

video, which he agrees is the most accurate evidence of what transpired, does not show

that any officer kicked him.  See Record Document 16, Exhibit G at 57; Record Document

23-1 at ¶ 2.  Additionally, Brown admitted that he was not hit by any officer until the time that he let his left arm fall down to his side towards his waistband.  See Record Document 16, Exhibit G at 83-84.

Brown must first establish "an injury."  Ikerd, 101 F.3d at 433.  He has not met this burden because he has failed to dispute, as required by Rule 56(c), that he suffered only a *de minimis* injury as a result of the incident at issue in this case.[5]  In Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995 (1992), the Supreme Court recognized that a constitutional violation does not occur every time an officer touches someone.  The Fifth Circuit has addressed the Hudson standard, stating:

> In just about every conceivable situation, some amount of force or contact would be too nominal to constitute a constitutional violation.  When the force used is insufficient to satisfy the legal standard necessary for recovery, the amount of force is *de minimis* for constitutional purposes.
>
> The amount of force that is constitutionally permissible, therefore, must be judged by the context in which that force is deployed. . . .
>
> [W]e believe that the amount of injury required to prevail in an excessive force action depends on the context in which the injury occurs.  Nonetheless, this circuit currently requires a plaintiff to have suffered at least some injury.  As the Supreme Court has recognized, however, the extent of injury suffered by a plaintiff is one factor that may suggest whether the use of force was excessive in a particular situation.

Ikerd, 101 F.3d at 434 -435 (internal citations and quotations omitted).

In this case, the Court has previously set the context of Brown's injuries.  The incident occurred in a high crime area known for drug and weapon activity.  Brown matched

---

[5]The Fifth Circuit has reasoned that "only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment" because "[i]n the fourth amendment context, any force exerted by a law enforcement officer that would be objectively reasonable under Graham would also be *de minimis* under Hudson."  Ikerd, 101 F.3d at 434.

the description of an individual who was reported to have sold drugs just the day before at that very location.   Additionally, the video and other undisputed summary judgment evidence demonstrates that no force was used until Brown became aggressive and that he was not hit until he removed his hand from his back and placed it by his waistband.

As to Brown's injuries, the Court will focus on his own deposition testimony, wherein he stated:

Q.      . . . Now, did you have any kind of injuries after this?

A.      Basically just like my, I had like a cut under my left eye.

Q.      What was that caused by?

A.      The first officer punching me in my face.

. . .

A.      . . . It actually was a bruise up under here.  Had my whole left cheek and stuff bruised.

. . .

A.      If you look at it, it look like it has a bruise right across here and that's it.  Skin broke.

. . .

A.      That was like, you could see where the skin was broke right across there.

. . .

Q.      . . . [A]fter this incident did you have any bleeding anywhere?

A.      Not that I recall.

Q.      And the only bruise that you know of is the one under your left eye that we talked about?

A.      Yes.

Record Document 23, Exhibit A at 100-102.  The Court further notes that Brown did not

seek medical treatments as result of the injuries he suffered during the incident.

In this context, the Court finds that the bruise and/or scratch suffered by Brown was

not an injury of constitutional significance.  See Carthon v. Prator, No. 08-1283, 2009 WL

3347115 *7(W.D. La. Oct. 14, 2009), aff'd, 408 Fed.Appx. 779 (5th Cir. 2010) ("[S]crape

on the forehead is a de minimis injury insufficient to establish a constitutional violation.").

Brown has failed to raise a genuine dispute of material fact to support the first element of

an excessive force claim, i.e., an injury, and summary judgment in favor of Defendants

must, therefore, be granted.

**V.     Unlawful Arrest Claims.**

Brown argues he was unlawfully arrested.  More specifically, he contends:

> [He] had already [been] patted down and nothing was found on him.   His
> license were [sic] returned to him and he was attempting to walk away from
> the officers after he felt that he was free to go. [He] was then accosted and
> struck several times by the officers who claim that he was resisting arrest.
> There was no underlying offense for which [he] was being arrested.

Record Document 23 at 6.  Conversely, Defendants argue that Officer Lynch had probable

cause to arrest Brown for the offense of resisting an officer, in violation of La. R.S. §

14:108.  See Record Document 16-1 at 1.

In order to prevail on a constitutional claim of unlawful arrest, or false arrest,  Brown

must show that he was arrested without probable cause.  See generally Brown v. Lyford,

243 F.3d 185, 189 (5th Cir. 2001).  "Probable cause to justify an arrest means facts and

circumstances within the officer's knowledge that are sufficient to warrant a prudent person,

or one of reasonable caution, in believing, in the circumstances shown, that the suspect

has committed, is committing, or is about to commit an offense."  Michigan v. DeFillippo,

443 U.S. 31, 37, 99 S.Ct. 2627, 2632 (1979).  Probable cause is ascertained on the basis

of facts available to the officer at the time of the arrest.  See Evett v. DETNTFF, 330 F.3d

681, 688 (5th Cir. 2003).  "[A]n officer may be shielded [by qualified immunity] from liability

even if he reasonably but mistakenly concludes that probable cause is present."  Id.

      A review of the summary judgment record, namely the video evidence, reveals that

there was probable cause to arrest Brown.  Brown was not arrested for the offense of

resisting arrest.  Rather, he was arrested and charged with the offense of "resisting an

officer" in violation of La. R.S. 14:108, which provides:

> A.    Resisting an officer is the intentional interference with, opposition or
> resistance to, or obstruction of an individual acting in his official
> capacity and authorized by law to make a lawful arrest, lawful
> detention, or seizure of property or to serve any lawful process or
> court order when the offender knows or has reason to know that the
> person arresting, detaining, seizing property, or serving process is
> acting in his official capacity.

La. R.S. 14:108(A).  This is a broad statute and specifically includes "opposition or

resistance" to an officer making a "lawful detention."  Id.  This Court has previously held

that Officer Lynch had reasonable suspicion to believe Brown was engaged in drug activity

and was lawfully detaining Brown in order to investigate these suspected drug activities.

The video evidence clearly shows that Brown became belligerent and began cursing and

shaking his finger in Officer Lynch's face.  The officers attempted to control the situation

and were met with additional resistance from Brown, who jerked his arms away, grabbed

the window burglar bars, and refused to comply with commands to place his hands behind

his back.  See generally Record Document 16, Exhibit D at ¶¶ 12-13; Exhibit E at ¶¶ 6-8.

All of these actions on the part of Brown easily fall within the category of "opposition or

resistance to" an officer making a lawful detention and there was probable cause to arrest.

Additionally, Defendants have presented the expert opinion of George Armbruster, who stated:

> A review of the Louisiana statute on "Resisting an Officer" shows that the actions of Mr. Brown in offering resistance to these officers when they were trying to conduct a reasonable investigation based upon information obtained by Officer Lynch falls within the definition as outlined within the statute. I am of the opinion that the arrest of Mr. Brown for this violation was reasonable based upon the totality of the situation.

Id., Exhibit H at 3.  Thus, at a minimum, Officer Lynch is entitled to qualified immunity because the summary judgment evidence demonstrate that Brown's arrest for resisting an officer was not unreasonable as a matter of law.  See Evett, 330 F.3d at 688 ("[A]n officer may be shielded [by qualified immunity] from liability even if he reasonably but mistakenly concludes that probable cause is present.").  Thus, summary judgment in favor of Defendants is granted as to Brown's unlawful arrest claim.

## VI.   Monell Claims.

Brown asserts Monell claims alleging that his injuries were caused by unlawful "customs, policies and practices" of the Shreveport Police Department and the City. Record Document 1 at ¶ 23.  He also alleges that Chief Whitehorn failed to properly train and/or supervise officers of the Shreveport Police Department.   In his opposition, Brown gives scant attention to his Monell claims, simply stating in conclusory fashion:

> The plaintiff's injuries were caused by the unlawful policies and practices of the Shreveport Police Department.
> Plaintiff has suffered a deprivation of his constitutional rights.  Chief Whitehorn failed to train and supervise employees of the Shreveport Police Department and plaintiff has suffered a deprivation of his constitutional rights, as a result of it.

Record Document 23 at 7.

In a Section 1983 lawsuit against a municipality, a plaintiff must show that his

constitutional injury was the result of official policy, custom, or the act of an official policy maker.  See Monell v. Dep't of Soc. Servs. of City of NY, 436 U.S. 658, 98 S.Ct. 2018 (1978). The Monell court concluded "that a local government may not be sued under [Section] 1983 for an injury inflicted solely by its employees or agents.  Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." Id. at 694, 98 S.Ct. at 2037-2038.

Here, Brown's Monell claim fails.  Even if the Court assumes that Brown suffered a deprivation of his constitutional rights, he has not provided competent summary judgment evidence of an official policy or custom of the Shreveport Police Department or the City and/or that any alleged constitutional deprivation was caused by such policy or custom. As reasoned by the Supreme Court,

> [I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality.  The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.  That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.

Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 404, 117 S.Ct. 1382, 1388, (1997) (emphasis in original).  Likewise, any failure to train/supervise claim against Chief Whitehorn fails because Brown has offered no evidence of a causal connection between the alleged failure to train/supervise and his alleged injuries.  There is also no record evidence that former Chief Whitehorn acted with deliberate indifference.  See Estate of Davis ex rel. McCully v. City of North Richland, 406 F.3d 375, 381 (5th Cir. 2005) ("When, as here, a plaintiff alleges a failure to train or supervise, the plaintiff must show that: (1) the

supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference.").  Therefore, because Brown has come forward with nothing more than conclusory allegations of liability, summary judgment in favor of Defendants is granted as to Brown's <u>Monell</u> claims.

**VII.   <u>Brady</u> Claims.**

Brown contends that the City failed to disclose exculpatory evidence in this case. <u>See</u> Record Document 1 at ¶ 16; Record Document 23 at 6.  More specifically, he contends that there was a <u>Brady</u>[6] violation because "the videotape of [his] beating and arrest . . . was certainly exculpatory evidence that was withheld from the defense."  Record Document 23 at 7.

<u>Brady</u> requires both prosecutors and police investigators to disclose exculpatory evidence to criminal defendants.  <u>See</u> <u>Tennison v. City & County of San Francisco</u>, 570 F.3d 1078, 1087 (9th Cir. 2009).  To state a claim under <u>Brady</u>, the plaintiff must allege that (1) the withheld evidence was favorable either because it was exculpatory or could be used to impeach, (2) the evidence was suppressed by the government, and (3) the nondisclosure prejudiced the plaintiff.  <u>See</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-282, 119 S.Ct. 1936, 1948-1949 (1999).  As to the prejudice prong, the Supreme Court has reasoned that "strictly speaking, there is never a real 'Brady violation' unless the nondisclosure was so serious that there is a reasonable probability that the suppressed evidence would have produced a *different verdict*."  <u>Id.</u> at 281, 119 S.Ct. at 1948 (emphasis

---

[6]<u>Brady v. Maryland</u>, 373 U.S. 83, 83 S.Ct. 1194 (1963).

added).  Additionally, the Court notes that "at its core, <u>Brady</u> seeks to ensure a fair trial, a trial whose verdict is reliable." <u>Smith v. Almada</u>, 640 F.3d 931, 942 (9th Cir. 2011), citing <u>Brady</u>, 373 U.S. at 87-88, 83 S.Ct. at 1197 ("The principle . . . is not punishment of society for misdeeds of a prosecutor but avoidance of an unfair trial to the accused." ).

Here, even if the Court assumes for the limited purpose of this Memorandum Ruling that the videotape was exculpatory and was withheld, Brown's <u>Brady</u> claim fails because he cannot show that the alleged nondisclosure prejudiced him.  The charges against Brown were dismissed.  There was never a trial out of which a verdict could have been rendered. Thus, the core concerns and protections of <u>Brady</u> – a fair trial and a reliable verdict – were simply never implicated in this matter.  Summary judgment in favor of Defendants must, therefore, be granted as to Brown's <u>Brady</u> claim.

**VIII.   Pendent State Law Tort Claims.**

In addition to his federal claims, Brown also asserts state law tort claims under Louisiana Civil Code Article 2315 arising from the same allegations that he was unlawfully detained and arrested and that Officer Lynch used excessive force during the August 13, 2009 incident.  <u>See</u> Record Document 1 at ¶  22.  As to his state law claims, Brown argued in his opposition:

> Plaintiff was unlawfully detained and arrested and Officer Lynch used excessive force during the August 13, 2009 incident.  The actions of Officer Lynch and others were excessive and unreasonable.

Record Document 23 at 7.

Under Louisiana law, the same standards are used in analyzing state law claims of false arrest and excessive force as constitutional claims, "namely reasonableness under the circumstances."  <u>Reneau v. City of New Orleans</u>, No. 03-1410, 2004 WL 1497711, *4

(E.D.La. July 2, 2004), citing Kyle v. City of New Orleans, 353 So.2d 969, 973 (La.1977). Thus, for the reasons discussed previously, the officers' actions in this case were reasonable under the circumstances[7] and summary judgment in favor of Defendants is granted as to Brown's pendent state law claims.

## CONCLUSION

Based on the foregoing analysis, the Court finds that Brown's unlawful detention, excessive force, unlawful arrest, Monell, Brady, and state law claims fail as a matter of law. Accordingly, Defendants' Motion for Summary Judgment (Record Document 16) is **GRANTED** and all of Brown's claims are **DISMISSED WITH PREJUDICE**.

A judgment consistent with the terms of this Memorandum Ruling shall issue herewith.

The Clerk of Court is directed to close this case.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 12th day of December, 2011.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE

---

[7]Based on this experience, his education, and his training, defense expert Armbruster concluded that "the actions of the officers were reasonable and fall within the generally accepted guidelines of the law enforcement community."  See Record Document 16, Exhibit H at 2.